IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NATHANIEL WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:18-00261-JB-B |
| | ) | |
| LOWE'S HOME CENTER, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Now before the Court is Defendant Lowe's Home Centers, LLC's ("Lowe's") Motion for Summary Judgment (Doc. 35), Plaintiff Nathaniel Wilson's ("Wilson") brief in opposition thereto (Doc. 40), and Lowe's brief in reply (Doc. 44). The Motion is now ripe for resolution. Following the Order dated July 18, 2019 (Doc. 52), and upon due consideration, the Court concludes that the Motion is due to be GRANTED for the reasons set forth below.

**I.  STANDARD OF REVIEW**

Summary judgment is due when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). If the movant adequately supports its motion, the burden shifts to the opposing party to establish, "by producing affidavits or other relevant and admissible evidence beyond the pleadings," specific facts raising a genuine issue for trial.

*Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011); Fed. R. Civ. P. 56(c)(1)(A). "All affidavits and declarations must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence." *Josendis*, 662 F.3d at 1315; *see also* Fed. R. Civ. P. 56(c)(4). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter....Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Dortch, Figures, & Sons, Inc. v. City of Mobile*, 2019 U.S. Dist. LEXIS 183075 at *13-14 (S.D. Ala. October 22, 2019)(*quoting Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992)).

## II.     BACKGROUND

Wilson filed this lawsuit against Lowe's, his employer, under the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §§ 12101-12213. Wilson claims that he is "disabled" and Lowe's failed to accommodate him as required by the ADA. He also claims that Lowe's discriminated and retaliated against him by unfair discipline and other miscellaneous actions.

### A.     Wilson's Employment with Lowe's, At-Work Injury, and Subsequent Restrictions

Wilson is a current Lowe's employee working as a Sales Specialist in the Millworks Department at Lowe's retail store location in Daphne, Alabama. (Doc. 36-1). Lowe's hired Wilson in 2007 as a Customer Service Associate in the Lawn and Garden Department. (*Id*.). He became a Department Manager, performing overnight stocking, shortly thereafter. (*Id*.). Over the next several years, Wilson was a Zone Manager and subsequently an Assistant Store Manager in several different departments. (*Id.)*.

In April 2013, Wilson suffered a back injury at work. (Doc. 36-1). He received workers' compensation medical treatment and benefits, and has taken Family and Medical Leave at different times over the years since his injury. (*Id.*). Wilson's physician placed an 8-hour shift restriction on Wilson's workday, as well as miscellaneous lifting restrictions ranging between ten and thirty pounds. (*Id.*). Following his injury, Wilson was kept in his Zone Manager position, a predecessor position to the Assistant Store Manager position, similar but with a different title and slightly different responsibilities. At times, other Zone Managers filled in to cover his job, including George Strange and Justin Crist. (Docs. 36-1 and 36-3).

In August 2014, Wilson reached Maximum Medical Improvement and was assigned the following permanent restrictions: no more than an 8-hour shift and a lifting restriction of 30 pounds. (Docs. 36-1). The Lowe's Accommodations Department is charged with reviewing an employee's job and restrictions after the employee reaches Maximum Medical Improvement. (Doc. 36-2). In Wilson's case, however, the Accommodations Department did not complete that review until October 2016. (*Id.*).

      **B.**    **Wilson's Temporary and Permanent Accommodations and the Interactive Process.**

With Wilson's permanent restrictions, he cannot perform some of the functions of the Assistant Store Manager (or "ASM") position that he held at the time of his injury; the ASM position requires that he be able to lift 50 pounds or more and to work a minimum of 48 hours per week. (Doc. 36-1). Salaried managerial positions like the ASM role are generally scheduled for 48 hours per week, and possibly more based on the needs of the business. (Doc. 36-3). Members of the salaried management team must be able to work Lowe's corporate schedule. (Doc. 36-2). This corporate schedule requires managers to work 9 to 10 hour days, to come in

3

prior to the store opening and stay after it closes to handle zone recovery (distributing, restocking merchandise), and to take assigned shifts (opening, middle, closing) according to management roles on a rotating basis. (*Id.*). Managers are always on call in case the store has an emergency, someone gets hurt, or there is a natural disaster. For these unanticipated circumstances, salaried managers must be available to answer emails, take phone calls, or report to the store in the middle of the night. (Docs. 36-2 and 36-3).

The Job Description for the Assistant Store Manager Position states as follows:

Work Schedule

**Requires morning, afternoon, and overnight availability any day of the week. Required to work a Corporate schedule determined by the needs of the business.** Requests to be scheduled off for a specific day require advanced notification and approval by supervisor. **Salaried positions are generally scheduled for 48 hours. More hours may be required based on the needs of the business.**

(Doc. 36-1) (emphasis added). On the ASM job description, Wilson drew a line through the words "generally scheduled for 48 hours. More hours may be required based on the needs of the business." (*Id.*). Below these crossed out words, Wilson wrote: "I can only work 8 hours per day (due to on the job injury)." (*Id.*). A copy of his revision to the job description is below:

Work Schedule

Requires morning, afternoon, and overnight availability any day of the week. Required to work a Corporate schedule determined by the needs of the business. Requests to be scheduled off for a specific day require advanced notification and approval by supervisor. Salaried positions are generally scheduled for 48 hours. More hours may be required based on the needs of the business. I can only work 8 hours per days (Due to on the Vib injury)

(*Id.*). By his statement on the actual job description combined with striking the 48-hour requirement, Wilson acknowledged that by only being able to work eight hours a day, he could not work the 48 hours per week required of Assistant Store Managers. Further, as this job

description evidences, an Assistant Store Manager has to be available to work "any day of the week," morning, afternoon, and overnight. (*Id*.).

Even though Wilson could not meet the lifting or workweek requirements of the ASM position after he was injured, the decision was made at the store level to let him remain in the ASM role as a temporary accommodation. (Docs. 36-2 and 36-3). This was consistent with Lowe's practice for decisions regarding light duty assignments and temporary accommodations following workers' compensation injuries to be made at the store level. (Doc. 36-2).

In March 2015, Lowe's issued a new Key Responsibilities guide for each job description and asked employees to sign it. (Doc. 36-1). The Daphne store's Human Resources Manager, Susan Grace, provided the guide to Wilson for the Assistant Store Manager position. Wilson signed his but pointed out that he could not work the 48-hour workweek or perform the lifting requirements of the ASM position. (Doc. 36-3).

In July 2015, Wilson was moved to an administrative Assistant Store Manager position as a temporary accommodation. (Doc. 36-1). This was a lateral move and there were no changes to Wilson's pay. (*Id.*).

In October 2016, Ronetta Wilson from Sedgwick, Lowe's third-party administrator, asked Grace about the status of Wilson's accommodation. (Doc. 36-4). Grace then followed up with Bud Spain, Accommodations Specialist in Lowe's North Carolina corporate office, who reviewed Wilson's assignment for the first time. (Doc. 36-2).

Lowe's deems the 48-hour workweek requirement to be an essential function of a salaried management role, such as the ASM position that Wilson held until October 2016. Spain thus determined that he could not remain in the ASM role working 8-hour days as a permanent

5

accommodation. To transition him out of the ASM role, Wilson was offered a Department Manager position working 8-hour shifts with frequent lifting of 15 pounds, occasional lifting of up to 30 pounds, making $22.39 per hour. (Doc. 36-1). As of October 2016, this was the highest paying open position at the Daphne store that could accommodate all of Wilson's restrictions. (Doc. 36-4). Wilson declined the position and instead moved into a Sales Specialist position in the Appliance Department. (Docs. 36-1, 36-3, and 36-4). Lowe's increased the allowable head count for the store, created the position for him, and Wilson accepted the accommodation. (Docs. 36-1 and 36-4).

There is some factual dispute as to the extent and frequency to which a Sales Specialist is expected to lift heavy items in the Appliance Department. These do not create a genuine issue of material fact, however, because there is no dispute that Wilson accepted the Sales Specialist role in the Appliance Department, and that he was instructed to ask a coworker for help when he needed assistance transporting appliances for a customer. (Docs. 36-1, 36-2, and 36-5).

Wilson remained in the Sales Specialist role in the Appliance Department until July 2018, when he transferred to a Sales Specialist position in the Millworks Department at the same pay rate. (Doc. 36-1). Wilson does not assert any claims with respect to his current Sales Specialist role in the Millworks Department.

### C. Wilson's Failure to Accommodate Claim.

Wilson argues that Lowe's should have waived the 48-hour availability requirement in the Assistant Store Manager role because he was getting his work done in 40 hours when he was temporarily accommodated in the ASM position. (Doc. 36-1). He further contends that he could potentially work six 8-hour workdays to accomplish the 48-hours per week. (Doc. 40 at 11).

6

Lowe's responds that the 48-hour workweek requirement is an essential function of the job and it entails availability and flexibility, and Wilson could not meet this requirement by working only 8-hour days. (Docs .36-2 and 36-3).

During his deposition, Wilson testified that he felt he was entitled to accommodations other than the 8-hour workday. He testified that in the Sales Specialist role in the Appliance Department, he could generally perform this job but that he should have had another associate scheduled with him at all times to assist him throughout the day to lift appliances. (Doc. 36-1). He also testified that he would have preferred the responsibilities of a Service Manager role because he would have had more coworkers available to him when seeking assistance with lifting. (*Id.*). He asked about two of these positions but never applied after Store Manager Nicki Benton conveyed that he would get a pay cut if he moved into this role. (*Id.*).

### D. Wilson's Miscellaneous Allegations of Disability Discrimination and Retaliation.

In addition to his failure to accommodate claims, Wilson makes miscellaneous allegations of disability discrimination and retaliation. In December of 2016, Wilson alleges that District Manager Ed Walker and his team stood in the plumbing area and stared at Wilson and the other associates for more than an hour. (Doc. 36-1). Wilson felt this was harassment intended to get him to quit. (*Id.*). Walker attested that he was conducting a training with his district team at the plumbing desk, and that it had nothing to do with Wilson, his disability, or any protected activity. (Doc. 36-10).

Wilson additionally contends that a coworker, Michael Roberts, told Wilson that Susan Grace, the Daphne HR director, instructed Roberts to deny Wilson's vacation time in 2017. (Doc. 36-1). Wilson's testimony regarding what Roberts told him is inadmissible hearsay and will be

stricken from the record. Wilson admits, however, that he never actually lost any vacation time. *(Id.).*

In August of 2017, Wilson called Assistant Store Manager Bobby Westbrook for help with a washing machine, and Westbrook responded that he was occupied at the time. (Doc. 36-1). Westbrook observed that Wilson raised his voice in reply to Westbrook while they were in front of a customer. Westbrook felt that Wilson's manner of speaking to a manager, especially in front of a customer, was unprofessional. (Doc. 36-6). Westbrook wrapped up what he was doing, came to Wilson's station, and loaded the machine for the customer. (Doc. 36-1). Subsequently, Westbrook issued a written warning to Wilson for speaking unprofessionally to a supervisor. (Doc. 36-6). In their conversation about loading the washing machine, Wilson told Westbrook that his coworker Tom Cormier had previously refused to help load it. (Doc. 36-1.) Several months later, Cormier mentioned to Wilson that Westbrook had said something about this event to Cormier, and Wilson became upset. (*Id.*). Westbrook does not recall this but believes he would have addressed Cormier's alleged refusal to help Wilson with Cormier in order to ensure that Wilson received help in the future. (Doc. 36-8).

Wilson also claims that Assistant Store Manager Justin Crist intentionally scheduled him to work alone in the Appliance Department in 2017, although he admits that the Appliance Department was adjacent to the Cabinets Department, where a coworker would have been scheduled at the same time. (Docs. 36-1 and 36-7). Wilson acknowledges that a manager cannot control who shows up for a shift. (Doc. 36-1). Crist attested that he has never intentionally scheduled Wilson to work without assistance. (Doc. 36-7).

Wilson was disciplined in January of 2018 after Service Manager Mike Crandall asked Wilson about a customer who had purchased a water heater and needed additional help. (Doc. 36-5). Near closing time, a customer who had purchased a water heater from Wilson needed additional help, and Wilson said he was on break and refused to do it. (*Id.*). After Human Resources Manager Russ Johnson investigated the incident, Wilson was disciplined for uncooperative behavior in refusing to assist the customer. (*Id.*).

Wilson claims that Westbrook told him in January of 2018 that Wilson must not have sold much that day because Westbrook's back was not sore. (Doc. 36-1). Wilson also claims that Westbrook asked him to lift an appliance, which Westbrook denies. (Doc. 36-8).

Wilson additionally alleges that Nicki Benton asked him to lift 85-lb wine coolers, in excess of his lifting restrictions, in or around January of 2018. (Doc. 36-1). Benton denies ever asking Wilson to exceed his lifting restrictions or knowing of anyone else doing so. (Doc. 36-3).

Wilson filed an EEOC charge in January 2017 and has made miscellaneous complaints to management of alleged unfair treatment over the last several years. (Doc. 36-1).

### III.    DISCUSSION

Wilson asserts claims of discrimination and retaliation under the ADA. Because there is no direct evidence of discrimination in the record before the Court, the *McDonnell-Douglas* burden-shifting framework applies to Wilson's claims. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). Under that framework, the initial burden rests with the plaintiff to establish a *prima facie* case of discrimination, after which the burden of production shifts to the defendant to articulate a legitimate non-discriminatory reason for the challenged action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-809 (1973). If a defendant produces non-

discriminatory reasons, the plaintiff is "left with the ultimate burden of proving that [the defendant] intentionally discriminated against her because of her disability." *Id*. A plaintiff must demonstrate that the reasons produced by the defendant are merely pretextual. *Zaben v. Air Prods. & Chems.*, 129 F.3d 1453, 1457 (11th Cir. 1997)(upon defendant's articulation of a legitimate nondiscriminatory reason, the burden shifts to plaintiff to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993)).

On summary judgment, Lowe's neither disputes that Wilson has permanent physical restrictions nor challenges his allegation that he meets the definition of "disabled" under the ADA. Instead, Lowe's position is that the failure to accommodate claims fail because Wilson cannot perform an essential function of the Assistant Store Manager position, the 48-hour or more workweek requirement, with or without reasonable accommodation. Lowe's argues that it engaged in the interactive process with Wilson by offering him a Department Manager role, and that it went beyond its ADA obligations by offering him a Sales Specialist role after he turned down the Department Manager position. Lowe's contends that Wilson abandoned his remaining claims on summary judgment and, alternatively, that those claims fail because they are not based on adverse actions. Lowes argues that all its decisions with regard to Wilson's employment (other than accommodations and medical leave) were unrelated to his alleged disability and were based on legitimate nondiscriminatory and non-retaliatory reasons that Wilson cannot show were pretextual.

### A. Wilson's Failure to Accommodate Claim.

To establish a *prima facie* case of failure to accommodate under the ADA, Wilson must show (1) that he has a disability; (2) that he is a "qualified individual," meaning that he can perform the essential functions of his job, with or without a reasonable accommodation; and (3) that the employer discriminated against him because of his disability. *Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1262 (11th Cir. 2007). The ADA requires employers to make "reasonable accommodations" for "qualified individuals" who can perform the "essential functions" of the job. *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).

As noted, Lowe's does not challenge that Wilson is disabled for purposes of summary judgment, so the Court does not reach that issue. Plaintiff's case falters on the second element, however, because Plaintiff fails to demonstrate a material issue of fact regarding his ability to perform the essential functions of the ASM role with or without a reasonable accommodation. Wilson was not a "qualified individual" who could perform all of the "essential functions" of the Assistant Store Manager position.

Wilson argues that the 48-hour workweek requirement is not an essential function of the Assistant Store Manager position because, for some period of time, he was working 8-hour workdays in that position. It was not essential, according to Wilson, that he be available for a longer workday. (Doc. 40 at 11). He additionally suggests that he could have possibly worked six 8-hour workdays in a week. (*Id.*). Wilson's arguments, however, fail to address the undisputed facts of Lowe's mandatory 48-hour workweek and the requirement for salaried managers to be

available to work 9 to 10-hour days and to be flexible to work more depending on the needs of the store. Wilson's undisputed permanent restrictions do not allow this availability and flexibility in his schedule.

There are several key undisputed facts that render summary judgment appropriate. First, it is undisputed that Wilson had a permanent restriction limiting his shifts to no more than eight hours. (Doc. 36-1). Second, it is undisputed that the Job Description for the Assistant Store Manager Position requires extensive availability, adherence to the corporate schedule, and a 48-hour workweek because Lowe's relies on its store management to cover opening and closing shifts, to come in prior to store opening and stay after it closes, and to be available in the event of an emergency. (Docs. 36-2 and 36-3). Third, it is undisputed that, on the ASM job description, Wilson crossed out "generally scheduled for 48 hours. More hours may be required based on the needs of the business." (*Id*.). Below these crossed out words, Wilson wrote: "I can only work 8 hours per day (due to on the job injury)." (*Id*.).

Based on the record, including the ASM job description, the Court finds that a 48-hour workweek with availability to work 9 to 10-hour days and flexibility to work hours depending on the needs of the store are essential functions of the ASM position. See *Earl*, 207 F.3d at 1365 (quoting 42 U.S.C. § 12111(8) (a job description is evidence of the position's essential functions.). There is no material dispute that those requirements are fundamental duties of the ASM position. See 29 C.F.R. § 1630.2(n)(1)(essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires."). The Eleventh Circuit has consistently held that mandatory shifts are an essential function of an employee's position. *See Agee v. Mercedes-Benz U.S. Intern. Inc.*, 646 Fed. Appx. 870, 875-876 (11th Cir. 2016) (holding

that availability to work overtime is an essential function as indicated by human resources manager's testimony and job description); *Davis*, 205 F.3d at 1306 (11th Cir. 2000) (holding that required overtime was an essential function); *Earl*, 207 F.3d at 1366 (concluding that punctuality is an essential function of the job because, among other reasons, failure to be on time or work a full shift would force other employees to work a longer shift). Wilson's undisputed restrictions prevent him from performing these essential functions with or without reasonable accommodation.

Furthermore, if Wilson were permitted to remain in a management role and work an 8-hour workday, other managers would have to step in and be available on his behalf. Exempting Wilson from the 48-hour workweek requirement would require other managers to perform his job duties once Wilson completed an 8-hour shift on his workdays. The ADA does not require an employer to reallocate an employee's essential job duties. *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1527 (11th Cir. 1997); *see also Siudock v. Volusia County School Bd.*, 568 Fed. Appx. 659, 663 (11th Cir. 2014). Wilson's preferred accommodation would do just that.

Wilson suggests that the fact that the Daphne store location was able to continue operating without significant disruption while he worked an 8-hour schedule as an ASM shows the accommodation was reasonable.[1] That Wilson worked for two years in the ASM role as a

---

[1] Wilson offers a former human resources manager's affidavit in support of the allegation that Wilson was completing his tasks in an 8-hour period. This allegation is inconsequential on summary judgment given the issue of the necessity of salaried managers being present in the store before opening and after closing and having flexible availability. Nevertheless, the Court notes that the affiant left Lowe's in February 2015 before Wilson moved into the ASM administrative role in July 2015. Accordingly, the affiant necessarily has no personal knowledge of Wilson's performance in this role, whether there were complaints, and the necessity of the Lowe's corporate schedule and work hour requirements after the affiant's departure. As such, the Court hereby strikes the affidavit to the extent it pertains to Wilson's employment after February 2015.

temporary accommodation does not establish that the accommodation was reasonable for purposes of the ADA. In *Holbrook v. City of Alpharetta, Ga.*, for example, a defendant police department accommodated the plaintiff, a blind police detective, "for quite some time and perhaps with relatively minor disruption and inconvenience" because crime scene investigation occurred infrequently. 112 F.3d at 1528. However, the Eleventh Circuit affirmed summary judgment in favor of the police department on the basis that crime scene investigation was an essential function of the position. *Id.* The Court noted that the police department had gone above and beyond its legal obligations under the ADA in accommodating the plaintiff, which the Court applauded, but the department did not violate the ADA when it decided to cease the accommodation. *Id*. *See also Rabb v. School Bd. of Orange County Fla.*, 590 Fed. Appx. 849, 852-853 (11th Cir. 2014) (part time tutoring position was not a reasonable accommodation, even though plaintiff held it for two years while rehabilitating from stroke, as there was no permanent part-time role available). Accordingly, that Wilson was permitted to work an 8-hour shift as a temporary accommodation does not negate the fact that the required work schedule, including 48-hours or more per week and flexible availability, is an essential function of any salaried management role. Wilson could not perform that essential function with his permanent restrictions.

Further, Wilson turned down a reasonable accommodation when he was offered the Department Manager role and therefore ended the interactive process. (Doc. 36-1). After he did so, Lowe's created a Sales Specialist position for him, which he accepted. (*Id.).* In so doing, Lowe's went above and beyond its obligations under the ADA. *Everett v. Grady Memorial Hospital Corp.*, 703 Fed. Appx. 938, 946 (11th Cir. 2017) (interactive process does not require

employer to provide the desired accommodation, only a reasonable one); *Siudock v. Volusia County School Bd.*, 568 Fed. Appx. 659, 663 (11th Cir. 2014) (employer does not have to provide maximum accommodation or every accommodation possible; simply a reasonable one).

Wilson made several other failures to accommodate allegations in his deposition (*i.e.*, that Lowe's should have scheduled a coworker to lift appliances for him at all times that he was working or that Lowe's should have transferred him into a Service Manager position in or after 2017), but he appears to have abandoned them on summary judgment as his brief does not mention them. Nevertheless, summary judgment is due on the merits with regard to those claims. An employee is entitled only to a reasonable accommodation; he is not entitled to the creation of a new position or the accommodation of his choosing. *See Siudock*, 568 Fed. Appx. at 659; *McGuire v. United Parcel Service, Inc.*, No. 17-13258, 2019 WL 1418060 at *4 (11th Cir. March 28, 2019); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997) (explaining a qualified individual with a disability is not entitled to the accommodation of his choice).

**B. Wilson's Other Miscellaneous Claims.**

Other than his failure to accommodate claim as to the ASM role, Wilson's claims were abandoned on summary judgment. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding abandoned and affirming grant of summary judgment as to claim presented in complaint but not raised in initial response to summary judgment motion). Even with that threshold deficiency, Wilson's remaining claims fail on the merits because he has not made a *prima facie* case or shown pretext as to any disciplinary action he received—or any other issue he complains about.

To establish a *prima facie* case of disability discrimination or retaliation, Wilson would have to show, *inter alia*, that he suffered an adverse action. *See EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016); *Stewart*, 117 F.3d at 1287. As for Wilson's disciplinary write-ups, they were not adverse actions. To advance a claim of discrimination or retaliation, a plaintiff must, but Wilson cannot, show a "serious and material change in the terms, conditions, or privileges of employment." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). The write-ups did not affect his compensation, work hours, duties, or anything else about his job in any material way.

The Court also finds that Wilson's miscellaneous claims do not, as a whole, amount to actionable harassment. Wilson asserts events that are not "sufficiently severe or pervasive to alter the terms and conditions of employment." *Baroudi v. Secretary, U.S. Dept. of Veterans Affairs*, 616 Fed. Appx. 899, 904 (11th Cir. 2015). He describes behavior that does not create an environment that a reasonable person would find sufficiently hostile or abusive. *Id.* To determine the objective severity of the harassment, the Court must consider "the frequency and severity of the retaliatory conduct, as well as whether it (1) is physically threatening or humiliating, and (2) unreasonably interferes with an employee's job performance." *Id.* The focus here is the totality of the circumstances. *Id.*

Plaintiff has failed to demonstrate a material factual issue that the events he alleges are related to his disability or alleged protected activity. None of them amount to conduct sufficiently severe or pervasive to render them actionable. *See Baroudi*, 616 Fed. Appx. at 904-05 (affirming summary judgment dismissing claim where alleged incidents "involved petty office squabbles and communication issues that are common in any workplace" such as

exclusion from emails and failing to inform plaintiff of meetings). *See also Howard v. United Pruitt Corp.*, 196 Fed. Appx. 780, 781 (11th Cir. 2006) (affirming summary judgment notwithstanding evidence that employee was screamed at on at least two occasions, was 'excluded occasionally from meetings,' and was asked a question by her supervisor in an inappropriate tone of voice*); Batuyong v. Gates*, 337 Fed. Appx. 451, 457 (6th Cir. 2009) (allegations that supervisor repeatedly raised voice, became verbally abusive, chastised employee in front of others, refused to allow employee to attend conference, and denied travel expenses was not sufficiently severe or pervasive); *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) ("rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable").

Moreover, even if Wilson claims that each instance is a stand-alone act of discrimination or retaliation, those claims still fail. Because these actions were legitimate and non-discriminatory or retaliatory, they do not advance either individual claims or amount to a hostile working environment. *See Carney v. City of Dothan*, 158 F. Supp. 3d 1263, 1290 (M.D. Ala. 2016) (granting summary judgment; "if the [employer] took each allegedly harassing action for a legitimate, non-retaliatory reason, then it stands to reason that [plaintiff's] protected activity was not the but-for cause of the alleged resulting hostile environment").

## IV. CONCLUSION

It is ORDERED that Lowe's Motion for Summary Judgment is GRANTED, and that Wilson's lawsuit is DISMISSED in its entirety and WITH PREJUDICE.

**DONE and ORDERED** this 12th day of November, 2019.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE